# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| KEITH BREWER, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )     Civil Action No. 7:14-CV-712 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Keith Brewer ("Brewer") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Brewer alleges that the ALJ failed to properly account for his moderate impairment with concentration, persistence and pace. Having reviewed the record and heard oral argument, I conclude that substantial evidence supports the ALJ's decision. Accordingly, I hereby **GRANT** the Commissioner's Motion for Summary Judgment. (Dkt. No. 20) and **DENY** Brewer's Motion for Summary Judgment (Dkt. No. 19).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Brewer failed to demonstrate that he was disabled under the Act.[1] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Brewer filed for SSI and DIB on July 12, 2012,[2] claiming that his disability began on January 28, 2012.[3] Administrative Record, hereinafter "R." 10. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 89–102, 119–35. On September 23, 2013, ALJ Anne Sprague held a hearing to consider Brewer's disability claim. R. 40–68. Brewer was represented by an attorney at the hearing, which included testimony from Brewer and vocational expert Robert Jackson. Id.

On October 9, 2013, the ALJ entered her decision analyzing Brewer's claim under the familiar five-step process,[4] and denying Brewer's claim for benefits. R. 10–22. The ALJ found

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Brewer previously filed applications for DIB and SSI in March 2009, which were denied by an ALJ on March 25, 2011. R. 72–84.

[3] Brewer's date last insured was December 31, 2015. R. 11. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

that Brewer suffered from the severe impairments of degenerative joint disease, arthritis, anxiety, post traumatic stress disorder (PTSD), and bipolar disorder. R. 13. The ALJ found that these impairments did not meet or medically equal a listed impairment, but that Brewer retained the ability to perform a limited range of light work. R. 13–14. As to Brewer's mental impairments, the ALJ found that he had a moderate limitation in concentration, persistence and pace, and limited his RFC to simple, routine and repetitive tasks with no interaction with the public and occasional interaction with coworkers and supervisors. Id.

The ALJ determined that Brewer could not return to his past relevant work as a plumber helper or maintenance supervisor, but that he could work at jobs that exist in significant numbers in the national economy, such as inspector/grader and packer. R. 21. Thus, the ALJ concluded that he was not disabled. Brewer requested that the Appeals Council review the ALJ's decision, and on October 31, 2014, the Appeals Council denied Brewer's request for review. R. 1–5. This appeal followed.

## **ANALYSIS**

Brewer raises only one issue in this appeal—that the restrictions of "simple, routine and repetitive tasks" in the RFC do not properly account for his moderate impairment with concentration, persistence and pace.[5] Brewer relies upon the holding in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), that an ALJ "does not 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Brewer explicitly stated that he is not assigning any errors with respect to the ALJ's physical RFC finding; thus, I will not address Brewer's physical limitations in this opinion. See Pl. Br. Summ. J. p. 3, n. 1.

3

Cir. 2011)). Having reviewed the record, I find that the ALJ's RFC properly accounts for Brewer's limitations and is supported by substantial evidence in the record.

The evidence of record reflects that Brewer has a limited history of being treated for mental health problems. Brewer was diagnosed with PTSD in late 2012, almost two years after he stopped working. R. 405, 505, 507. The record contains only two instances in which Brewer sought mental health treatment. R. 403, 506. Specifically, on August 21, 2012, Sharron Jones-Daggett, M.D., assessed Brewer with bipolar disorder and a GAF of 42,[6] but noted that Brewer had good attention and concentration. R. 506. On October 31, 2012, Dr. Jones-Daggett performed a mental assessment of Brewer and assessed PTSD and a GAF of 50, and noted that he had fair attention and concentration. R. 403.

The Commissioner obtained three opinions regarding Brewer's mental functional capacity. On October 31, 2012, state agency psychologist Julie Jennings, Ph.D., reviewed Brewer's records and determined that he had limitations with concentration, persistence and pace, among other things. Specifically, she concluded that Brewer was moderately limited in his ability to carry out detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others

---

[6] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev.2000) (DSM IV), with 100 being the most high-functioning. The DSM IV defines GAF scores as follows: a score of 41–50 suggests serious symptoms or serious impairment in social or occupational functioning; a score of 51–60 suggests moderate symptoms or difficulty in social or occupational functioning; a score of 61–70 suggests mild symptoms or some difficulty in social, occupational, or school functioning. DSM IV. The GAF has been dropped from the Fifth Edition of the DSM, published in 2013, due in part to its "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM–5 at 16. Despite its shortcomings, the GAF was used by Brewer's providers during the relevant period of alleged disability and the ALJ discussed the scores. Thus, they are part of the medical evidence.

without being distracted, complete a normal work day and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 98–99. Dr. Jennings noted that Brewer would have difficulty maintaining concentration due to bipolar disorder, stating "[h]e is distractible and has moderate psychomotor agitation." R. 99. Considering her assessed limitations, Dr. Jennings concluded that Brewer was capable of handling simple, unskilled, non-stressful work. R. 100.

On July 12, 2013, state agency psychologist Stonsa Insinna, Ph.D., reviewed Brewer's records on reconsideration and agreed with Dr. Jennings's findings with regard to Brewer's moderate limitations with concentration, persistence and pace. R. 130–32. Importantly, Dr. Insinna added the following conclusion: "This claimant does have some issues of self-regulation that have contributed to him avoiding hospitalization. In some sense, it has been adaptive for him. He can sustain a regular work schedule and function as the job outlines…if he seeks work that is congruent with his needs and coping, i.e., work settings dealing with things would take preference over work settings dealing with people or data." R. 132.

On July 3, 2013, Roger DeLapp, Ph.D., evaluated Brewer and completed a psychology report. R. 572–75. Dr. DeLapp performed a mental status examination and assessed Brewer with combat-related PTSD. R. 574–75. Dr. DeLapp determined that Brewer's prognosis may improve if Brewer would let himself get regular psychiatric help. R. 575. Dr. DeLapp concluded, "Mr. Brewer has a 17 year history of working successfully in the heating and air condition business as a mechanic. Currently, because of his PTSD, he could not be in regular attendance at work or work on a consistent basis. However, were he to be getting more treatment and able to go back to work, his PTSD symptoms would probably improve because he would feel less helpless. He would not require special supervision to work. Currently, his PTSD would interrupt his ability to

5

work a normal work day or work week. It is going to compromise his ability to get along with supervisors, coworkers, and the public and to tolerate the competitive stress of the work place." R. 575. Thus, Dr. DeLapp determined that Brewer's mental functional limitations would impact his ability to attend work regularly and to get along with his supervisors, co-workers and the public. Dr. DeLapp also determined that despite having worked competitively in the HVAC business for 17 years, Brewer would have difficulty dealing with the competitive stress of the work place.

Based on the above evidence, the ALJ determined that Brewer had moderate difficulties in maintaining concentration, persistence or pace in step 3 of her analysis. R. 14. The ALJ noted that the evidence "reflects [Brewer's] symptoms and signs of irritation, mood fluctuation, agitation, poor concentration, inability to focus, and poor sleep." R. 16. With regard to the mental health opinion evidence, the ALJ gave Dr. Jennings' opinion some weight, and Dr. Insinna's opinion great weight, specifically noting that Dr. Insinna found that Brewer could sustain a regular work schedule. R. 19. The ALJ considered Dr. DeLapp's opinion and gave it little weight, finding it to be inconsistent with his own clinical findings, the findings of Dr. Insinna and the medical evidence as a whole. R. 19. The ALJ specifically gave little weight to Dr. DeLapp's conclusion that Brewer could not be in regular attendance at work on a consistent basis due to PTSD which would interrupt his ability to work a normal workday/workweek.[7]

---

[7] When making an RFC assessment, the ALJ must assess the medial opinions of record. 20 C.F.R. § 404.1527(b). The regulations provide that the opinion of a consultative examiner like Dr. DeLapp should be given more weight than a medical source that has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). However, the ALJ must weigh several factors when evaluating a consultative opinion, such as whether relevant medical evidence supports the opinion, how well explained the opinion is, how consistent the opinion is with the record as a whole, and whether the opinion is from a specialist in the relevant field. 20 C.F.R. § 404.1527(c)(1–6). Ultimately, the ALJ must consider the opinions received in light of the evidence of record and determine whether the record supports the opinions offered. While an examiner's opinion is generally accorded more weight than a non-examiner's opinion, if an "opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 385, 590) (4th Cir. 1996)). To the extent that Brewer is arguing that the ALJ improperly weighed Dr.

6

The ALJ also considered Brewer's testimony as to his daily activities, and found them inconsistent with his complaints of prolonged disabling functional limitations. R. 19. The ALJ noted that Brewer reported problems with completing tasks and concentration, but that "he is able to follow written/spoken instructions 'OK,' pay bills, count change, handle a savings account, and use a checkbook/money orders." R. 20. Given all of the evidence, the ALJ concluded that Brewer was capable of light work with simple, routine, repetitive tasks with no interaction with the public and occasional interaction with coworkers and supervisors. R. 15.

Brewer argues that the RFC set forth by the ALJ failed to properly account for his limitations with concentration, persistence and pace. In <u>Mascio v. Colvin</u> the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u> at 638; <u>see</u> <u>also</u> <u>Sexton v. Colvin</u>, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing <u>Wiederholt v. Barnhart</u>, 121 Fed. Appx. 833, 839 (10th Cir. 2005)). The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; <u>see</u> <u>also</u> <u>Hutton v. Colvin</u>, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in <u>Mascio</u> because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

---

DeLapp's opinion, substantial evidence supports the ALJ's decision to give the opinion little weight for the reasons set forth herein.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in

8

concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and those limitations must be included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, substantial evidence supports the ALJ's decision that despite Brewer's limitations in concentration, persistence, or pace, he was capable of performing simple, routine, repetitive tasks. The ALJ based this conclusion upon Brewer's treatment records reflecting that Brewer's

9

attention and concentration were not impaired, Brewer's report that "he is able to follow written/spoken instructions 'OK,' pay bills, count change, handle a saving account, and use checkbook/money orders," and the opinion of Dr. Insinna that Brewer can sustain a regular work schedule and function as the job outlines if he seeks work dealing with things, rather than people. R. 18–20. The ALJ accounted for Dr. Insinna's recommendations by limiting Brewer to simple, routine and repetitive tasks with no interaction with the public and occasional interaction with coworkers and supervisors. Brewer's limited mental health treatment, his daily activities, and the medical opinion evidence in the record all provide evidence to support the ALJ's conclusion that Brewer remained capable of performing simple, routine, repetitive tasks. Further, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. The ALJ discussed substantial record evidence in determining Brewer's mental RFC, and explained why Brewer's limitations in concentration, persistence or pace did not translate into any additional restrictions in the ALJ's hypothetical to the vocational expert. R. 16–20.

Essentially, Brewer's appeal asks the court to re-weigh the conflicting evidence with regard to his impairment with concentration, persistence and pace. The ALJ acknowledged that Brewer had a moderate impairment in concentration, persistence and pace. The evidence conflicted, however, with regard to the impact of that impairment on Brewer's functioning. Dr. Insinna found that despite his moderate impairment, Brewer was capable of sustaining a regular work schedule and functioning as the job required. Dr. DeLapp, however, concluded that Brewer's moderate impairment would prevent him from sustaining a regular work schedule and functioning as the job required. The ALJ is charged with weighing conflicting evidence, and this court should affirm the ALJ's conclusion as long as it is supported by substantial evidence. Here, there is evidence to support the ALJ's determination that Brewer was capable of

performing simple, routine, repetitive tasks, despite his impairment with concentration, persistence or pace.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Brewer's claim for benefits and in determining that his physical and mental impairments would not significantly limit his ability to do basic work activities. Accordingly, I **AFFIRM** the Commissioner's decision, **DENY** Brewer's motion for summary judgment, and **GRANT** the Commissioner's motion for summary judgment.

Entered: March 22, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge